# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

TAMMY JOHNSON,

      Plaintiff,

v.                                              CIVIL ACTION NO. 3:19-0856

JAMES B. NUTTER & COMPANY and
REVERSE MORTGAGE FUNDING LLC and
TERRA ABSTRACT TRUSTEE WEST VIRGINIA, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court are three motions to dismiss. The first motion was originally filed by Defendant Terra Abstract Trustee West Virginia, Inc. ("Terra Abstract") in the Circuit Court of Wayne County, West Virginia on November 20, 2019, and was re-filed in this Court along with the Notice of Removal on December 4, 2019. *Terra Abstract Mot. to Dismiss*, ECF No. 3. The second motion was filed by Defendant James B. Nutter & Co. ("Nutter") on December 11, 2019, and only concerns Counts One, Four, and Five of the Complaint. *Nutter Mot. to Dismiss*, ECF No. 6. Finally, Defendant Reverse Mortgage Funding LLC ("Reverse Mortgage") filed its motion on December 23, 2019, arguing for dismissal of the same three counts. *Reverse Mortgage Mot. to Dismiss*, ECF No. 11. The relevant issues have since been fully briefed, and are ripe for the Court's review. For the reasons set forth below, the Court **DENIES** the motions.

## I. BACKGROUND

Plaintiff Tammy Johnson ("Plaintiff") is the widowed spouse of Archie Johnson ("Mr. Johnson"), an older man with a "secretive and guarded personality" that is of particular importance

to the instant dispute.[1] *Compl.*, ECF No. 1-2, at ¶¶ 1–3. In May 2007, Mr. Johnson and Plaintiff were married and purchased a double-wide manufactured home to situate on a parcel of land that Mr. Johnson had acquired from his daughter. *Id.* at ¶¶ 5–6. For the duration of their relationship, "Mr. Johnson kept the financial circumstances and details of the household, his income and expenditures, and his significant financial dealings secret from" his wife. *Id.* at ¶ 3. Consistent with this personality, Mr. Johnson obtained a home equity conversion mortgage—more commonly known as a "reverse mortgage"[2]—from Defendant James B. Nutter & Co. in 2008 without informing, consulting, or naming his wife. *Id.* at ¶ 11. The reverse mortgage is secured by a Deed of Trust[3] "on the real estate upon which Plaintiff's manufactured home now sits." *Compl.*, at ¶¶ 11–12. In obtaining the loan, Mr. Johnson represented himself—fraudulently—as an unmarried man, and "did not disclose the personal property nature of the manufactured home or Plaintiff's undivided ownership interest in that home." *Id.* at ¶ 13. Plaintiff alleges that due diligence would have revealed her interest in the home, and that the agreement would therefore have been invalid without her consent and joinder.[4] *Id.* at ¶ 15.

On March 13, 2014, Mr. Johnson died and left his wife as his sole heir. *Id.* at ¶ 4. Plaintiff continued living in the manufactured home after her husband's death, and it is unclear when or

---

[1] As with any consideration of a motion to dismiss, the Court draws its facts from the Complaint and accepts them as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[2] Reverse mortgages are "a special type of home loan only for homeowners who are 62 and older" that "allows homeowners to borrow money using their home as security for the loan." *See* What Is A Reverse Mortgage?, *available at* https://www.consumerfinance.gov/ask-cfpb/what-is-a-reverse-mortgage-en-224/ (last visited Jan. 29, 2020). Under a reverse mortgage arrangement, the amount a homeowner owes to a lender increases with time and is typically repaid by selling the home either before or after the death of a borrower. *See id.*

[3] Defendant Terra Abstract is "the acting substitute trustee under the Deed of Trust." *Terra Abstract Mot. to Dismiss*, at 1.

[4] Indeed, she contends that she would not have offered such consent if her husband had consulted her. *Id.* at ¶ 18.

how she came to learn of the reverse mortgage her husband had obtained on the property. *Id.* at ¶ 27. Yet no matter when she learned of the reverse mortgage, she faced a problem common to spouses who are not signatories to a reverse mortgage loan or accompanying deeds of trust: namely, that the "death of a borrower generally allows a reverse mortgage lender to stop extending credit under the reverse mortgage loan and to call the loan immediately due." *Id.* at ¶ 19. Plaintiff was thus faced with the prospect of immediate foreclosure on the property.

The United States Department of Housing and Urban Development ("HUD") insures reverse mortgages, and has sought to address situations like Plaintiff's by establishing a "non-borrowing spouse" program in 2015. *Resp. in Opp'n to Reverse Mortgage Mot. to Dismiss*, ECF No. 14, at 2–3. A "non-borrowing spouse" is an individual who was married to a reverse mortgage borrower, but who was not a party to the loan or deed of trust securing it. *Id.* at 3. Under HUD's Mortgagee Optional Election ("MOE") program, "HUD will take assignment of any pre-2014 [reverse mortgage loan] at a stage *before* foreclosure if the loan involves a qualifying non-borrowing spouse who survived the borrower and continues to reside in the home." *Id.* at 3 (emphasis in original).

Plaintiff attempted to take advantage of this policy at some point after its promulgation, though the Complaint is silent as to when. *Compl.*, at ¶ 23. In any event, she claims that "Nutter wrongly failed to determine and provide notice in writing that [she] was a non-borrowing spouse entitled to remain in the home until her death or abandonment of it." *Id.* at ¶ 26. She argues they reached this determination despite treating her as a non-borrowing spouse after a storm damaged her home's roof and electrical equipment in July 2018. *Id.* at ¶¶ 29, 34. When she requested payment from State Farm—her insurer—"Nutter demanded [it] issue the insurance proceeds check

for the repairs to Plaintiff's manufactured home jointly in its name." *Id.* at ¶ 32. Thereafter, Nutter refused to release the check to Plaintiff for her use in repairing the home's roof.[5] *Id.* at ¶ 43.

While the exact chronology of events is once again ambiguous, Nutter eventually told Plaintiff "that it was no longer going to deal with her about its wrongful conversion and retention of the proceeds of her hazard insurance policy" and "verbally told [her] that it had transferred her insurance proceeds and control over them to" Defendant Reverse Mortgage without her prior knowledge or permission. *Id.* at 51–52. As no notice of the transfer was ever provided to her, Plaintiff "does not know if [Reverse Mortgage] is now the holder of the reverse mortgage or its servicer." *Id.* at ¶ 55.

One other aspect of the background of this case is worth mentioning. While never referenced in the Complaint itself, the Circuit Court of Wayne County granted a default judgment to Nutter in a suit against Plaintiff on March 20, 2017 after noticing a scrivener's error in the Deeds of Trust—the loan and the reverse mortgage—at issue here. *See Ex. D*, ECF No. 3-4, at 2. Specifically, Nutter alleged that "legal descriptions on both of the Deeds of Trust mistakenly failed to include the 'Excepting and Reserving' section." *Id.* Plaintiff was served with process on November 30, 2016, but never filed an answer or otherwise appeared to defend herself against Nutter's suit. *Id.* at 3. The court granted default judgment in Nutter's favor and held that the Deeds of Trust securing the property "both properly encumber the entire property and are valid and enforceable first priority liens against Archie Johnson's interest in the property." *Id.* at 3–4. The court further "barr[ed] forever the Respondents from asserting any right, lien, title or interest" in the property. *Id.* at 4.

---

[5] The Complaint appears to suggest that this refusal was motivated by Plaintiff's inability to afford the substantial deposit necessary to hire contractors. *See, e.g., Compl.*, at ¶ 44.

At some point after default judgment was issued and before the initiation of this suit, Defendant Terra Abstract "sent notice addressed to the estate of Archie Johnson that it intend[ed] to implement non-judicial foreclosure under the reverse mortgage Deed of Trust by trustee sale scheduled for October 29, 2019." *Id.* at ¶ 64. Terra Abstract apparently intended to include the sale of Plaintiff's manufactured home as part of the sale, which she claims is personal property rather than a fixture. *See id.* at ¶ 68. In an effort to stop the sale and vindicate her right to remain in the home until her death, Plaintiff initiated the instant action in the Circuit Court of Wayne County on October 21, 2019. *Id.* at 1. Invoking this Court's federal question jurisdiction, Defendants timely filed a Notice of Removal on December 4, 2019. *Notice of Removal*, ECF No. 1, at 1.

The Complaint is split into five counts. Count One is a claim for equitable relief, and seeks a declaratory judgment that all three defendants are estopped from foreclosing on Plaintiff's home until her death. *Compl.*, ¶¶ 70–74. Count Two is a claim for damages raised against Reverse Mortgage and Nutter, and is predicated upon their alleged failure to permit Plaintiff from using her insurance proceeds to repair her home. *Id.* at ¶¶ 75–76. Count Three is another damages claim, and is again raised against Reverse Mortgage and Nutter. *Id.* at ¶¶ 77–80. Plaintiff argues that both defendants created a constructive trust for her protection, thereby creating a special relationship and a duty of care that the defendants later breached. *Id.* Count Four—the final damages claim—is raised solely against Nutter, and alleges that the company violated the Equal Credit Opportunity Act ("ECOA") and its implementing regulations when it did not respond to her request for an extension of credit. *Id.* at ¶¶ 81–85. Finally, Count Five is an equitable claim raised against all defendants that seeks to "quiet [P]laintiff's title against any claim of right to foreclose on [her] home under a fraudulently-obtained, and/or negligently-closed reverse mortgage to which [she] was not a party." *Resp. in Opp'n to Nutter Mot. to Dismiss*, ECF No. 16, at 9. Each defendant

quickly followed with its own motion to dismiss; Plaintiff filed Responses in Opposition to each motion,[6] and Nutter and Reverse Mortgage filed Reply memoranda addressing the issues she raised. It is with this procedural and factual background in mind that the Court turns to the legal standards governing this case.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need not contain detailed factual allegations, but it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted). "Nevertheless, a complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *E.I. du*

---

[6] In responding to the motions, Plaintiff's counsel avers that he informed Defendants' counsel that HUD had "re-started defendants' opportunity to obtain full payment of this loan by assigning it to HUD under new, relaxed non-borrowing spouse criteria." *See, e.g., Resp. in Opp'n to Reverse Mortgage Mot. to Dismiss*, at 11. Counsel further notes that Plaintiff has submitted a new application for approval as part of the program, but that Defendants' counsel has yet to reply to his entreaties. *Id.* Finally, he attaches information about the "relaxed" program from HUD and various pieces of correspondence with opposing counsel. *See, e.g., Ex. 1*, ECF 14-1. In their Reply Memoranda, Nutter and Reverse Mortgage argue that the Court should not consider this information in ruling on the instant motions. *See Reverse Mortgage Reply Mem.*, ECF No. 15, at 1. The Court agrees. As Plaintiff herself points out at length, a Court's review at the motion to dismiss stage is limited—with several exceptions—to information contained in the Complaint and must disregard extrinsic evidence. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). Counsel's attempt to reach an amicable resolution of this case is admirable, but letters written after the filing of a complaint are, self-evidently, not "integral to and explicitly relied on in" that complaint. *Id.* The Court will accordingly disregard any new factual assertions contained in Plaintiff's Responses in Opposition, along with any attachments and other extrinsic evidence counsel has provided.

*Pont de Nemours & Co. v. Kolon Idus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotations omitted).

Federal Rule of Civil Procedure 12(b)(6) provides a means of challenging a complaint for failure to meet this standard. In considering a Rule 12(b)(6) motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A judge must also "draw all reasonable inferences in favor of the plaintiff." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). On the other hand, a judge "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

Inasmuch as a Rule 12(b)(6) motion is intended to test the legal sufficiency of a complaint, it "generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 465 (4th Cir. 2007) (en banc). Nevertheless, where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Id.* In such cases, "all facts necessary to the affirmative defense [must] clearly appear on the face of the complaint." *Id.*

As a final matter, courts may consider documents outside the complaint in limited circumstances without converting a motion to dismiss into one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Importantly, this includes documents "submitted by the movant that [were] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (internal citation omitted). Courts may also "take judicial notice of docket entries, pleadings and

papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015), *aff'd*, 639 Fed. Appx. 200 (Mem.), 2016 WL 2609617 (4th Cir. May 6, 2016).

### III. DISCUSSION

Each of the defendants has filed a motion to dismiss, though they address different counts and employ distinct arguments. Terra Abstract seeks complete dismissal from this suit, arguing that its role "merely as the trustee" means that it "has no place in this litigation." *Terra Abstract Mot. to Dismiss*, at 3. Nutter's motion seeks dismissal of Counts One, Four, and Five. *Nutter Mot. to Dismiss*, at 1. Reverse Mortgage's motion seeks dismissal of the same counts; as it is not a named party to Count Four, however, it effectively only seeks dismissal of Counts One and Five. *Reverse Mortgage Mot. to Dismiss*, at 1; *Resp. in Opp'n to Reverse Mortgage Mot. to Dismiss*, at 9 n.7. The three defendants have advanced overlapping and sometimes jumbled arguments in support of their motions, occasionally cross-referencing each other's briefs and often offering their own spin on particular issues. There is no way to consider the motions count-by-count or defendant-by-defendant. Instead, the Court will structure its analysis around the defendants' distinct arguments, combining them where possible and separating them where necessary.

**A. Terra Abstract**

Terra Abstract argues that its only connection to this suit is its role as acting substitute trustee under the Deed of Trust, and that its dismissal from this action is therefore warranted. *Terra Abstract Mot. to Dismiss*, at 1. The first half of this statement is true enough, and so the Complaint justifiably "does not assert damages claims against defendant Terra Abstract." *Resp. to Terra Abstract Mot. to Dismiss*, ECF No. 5, at 14. Nevertheless, Plaintiff claims that she does name Terra Abstract in her claims for declaratory and equitable relief found in Count One and Count Five of

the Complaint. *Id.* This slightly overstates the case; Plaintiff frequently employs the catch-all term "defendants" when referring to any combination of the three defendants in this case, and the Complaint is far from clear as to which entities are actually named in which counts. Nevertheless, the Court accepts Plaintiff's reading of Counts One and Five as "naming" Terra Abstract and rejects the notion that she "has simply stated no cause of action against" it. *Terra Abstract Mot. to Dismiss*, at 3.

In reaching this conclusion, the Court finds Judge Johnston's reasoning in *Wygal v. Litton Loan Servicing LP*, No. 5:09-cv-00322, 2009 WL 2524701, at *3 (S.D.W. Va. Aug. 18, 2009), to be particularly instructive. In *Wygal*, a West Virginia plaintiff named a West Virginia trustee in his complaint. *Id.* at *1. The principal defendant argued that the trustee was fraudulently joined, and far from a necessary party. *Id*. In considering whether the plaintiff could establish a cause of action against the trustee, Judge Johnston reasoned that the trustee was "only superficially related to [the plaintiff's] claims, which relate to wrongful actions taken by the [moving defendant]." *Id.* at *4. As such, "the underlying debt [was] only relevant to the extent that it exist[ed]." *Id.* at *5. As the *Wygal* plaintiff did not challenge the validity of the debt itself, Judge Johnston dismissed the trustee. *Id.* Of course, this case presents just the opposite set of facts. The crux of Plaintiff's suit is that the reverse mortgage at issue is the invalid product of a fraud. The Court is therefore persuaded that Terra Abstract is a proper—albeit nominal—party to this case.[7] *See*, *e.g.*, *Conrad*

---

[7] Terra Abstract also argues that dismissal is justified because it "cannot be an arbiter of disagreements between the lender and the borrower." *Terra Abstract Mot. to Dismiss*, at 3 (citing *Lucas v. Fairbanks Capital Corp.*, 618 S.E.2d 488, 490, Syl. Pt. 2 (W. Va. 2005)). This, of course, is precisely the point. Neither Plaintiff nor the Court expect Terra Abstract to operate as the judge of this dispute. To the contrary, it is the Court's judgment that will control the parties' rights and interests—including those of Terra Abstract. And while Plaintiff does not seek an injunction enjoining a foreclosure sale of her home at this time, any such action would involve naming Terra Abstract as a party. *See Wygal*, 2009 WL 2524701, at *3 ("It has long been held that the trust-debtor may file an action against the trustee to enjoin the foreclosure sale of the property.").

*v. Ocwen Loan Servicing, LLC*, No. 1:17cv53, 2017 WL 3185142, at *6 (N.D.W. Va. July 26, 2017) (noting that substitute trustees are "often considered nominal because [they] hold title to property for the sole benefit of the real parties in interest"). Terra Abstract's motion to dismiss is therefore denied.

### B. *Res Judicata*

Each defendant also argues that *res judicata* bars Plaintiff "from attempting to re-litigate the validity of the Deeds of Trust or her right, lien, title, or interest in the property purportedly at issue" in this case. *Mem. in Support of Nutter Mot. to Dismiss*, ECF No. 7, at 4 (internal quotations omitted). They rely on the 2017 decision by the Circuit Court of Wayne County to grant default judgment in favor of Nutter on the issue of a scrivener's error in the Deeds of Trust. Plaintiff contends that *res judicata* does not apply here, both because the Complaint does not mention the prior judgment, *Resp. to Terra Abstract Mot. to Dismiss*, at 18, and because the cases rely on different evidence, *id.* at 20.

As a preliminary matter, the Court notes that the first portion of Plaintiff's argument is simply incorrect. Courts are free to "take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown*, 2015 WL 5008763, at *1 n.3. The Court does so here with respect to Exhibit D of Terra Abstract's Motion to Dismiss, which is a complete copy of the Circuit Court of Wayne County's decision in *James B. Nutter & Company v. Tammy Johnson, Administratrix of the Estate of Archie Johnson*, Case No. 16-P-041.

Turning to the substance of Defendants' *res judicata* arguments, the Court begins with a review of applicable law. Under 28 U.S.C. § 1738, state court judgments "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the

courts of such State . . . from which they are taken." More colloquially, this means that federal courts are obliged "to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment." *McDonald v. City of West Branch*, 466 U.S. 284, 288 (1984). It follows that West Virginia law governs this analysis. "*Res judicata*, or claim preclusion, generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action." *Porter v. McPherson*, 479 S.E.2d 668, 676 (W. Va. 1996) (quoting *State v. Miller*, 459 S.E.2d 114, 120 (W. Va. 1995)) (internal quotations omitted).

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata,* three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

*Blake v. Charleston Area Med. Ctr., Inc.*, 498 S.E.2d 41, 43, Syl. Pt. 4 (W. Va. 1997). As discussed above, "[w]hen entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (internal citation omitted).

The implications of this legal framework for the instant case follow easily enough, as the third factor is fatal to Defendants' contention. Plaintiff bases much of her equitable estoppel argument contained in Count One on Nutter's conduct after her home was damaged in a July 2018 storm, and predicates Count Four on a violation of various provisions of the ECOA that allegedly occurred in 2019. Obviously neither of these claims "could have been resolved" in the Circuit Court of Wayne County in 2017. *See Blake*, 489 S.E.2d at 473, Syl. Pt. 4. Count Five, on the other

hand, deserves more scrutiny. Plaintiff recounts her husband's fraudulent behavior in obtaining the loan—and Nutter's purported recklessness in issuing it without investigating whether he was the property's sole occupant—before asking this Court to reform the Deeds of Trust to provide for Plaintiff's "right to possession of and residence in her home as a non-borrowing spouse until her death, or the home's sale or abandonment, and to issue a declaration quieting her title in her residence on those terms." *Compl.*, at ¶ 94. Mr. Johnson's alleged fraud and Nutter's lack of diligence would have been as apparent to Plaintiff in 2017 as they are to her today, and both issues certainly could have been litigated in the Circuit Court. Nevertheless, this Court considers the Complaint in its entirety. In laying out a course of conduct wherein Nutter interacted with Plaintiff as if she were a non-borrowing spouse with a right to live on the land, she has alleged a set of facts that could be sufficient to support a claim for reforming the Deeds of Trust and quieting her title. As such, the Court finds that—while well-taken—the defendants' *res judicata* argument must fail.

**C. Statute of Limitations**

All three defendants also argue that relevant statutes of limitation bar Plaintiff's claims. At the outset, the Court notes that this argument has no application to Counts One or Five. Both counts are claims for equitable relief—estoppel with respect to Count One, and reformation of the Deeds of Trust with respect to Count Five. West Virginia "law is clear that there is no statue of limitation for claims seeking equitable relief." *Dunn v. Rockwell*, 689 S.E.2d 255, 266 (S.D.W. Va. Nov. 24, 2009). It follows that no statute of limitation bars either claim.

The Court therefore turns to the only remaining claim at issue: Count Four. Arguing for dismissal, Nutter in particular contends that the "statute of limitations under ECOA is two years from the date of the occurrence of the violation." *Mem. in Support of Nutter Mot. to Dismiss*, at 5 (citing 15 U.S.C. § 1691e(f)). The Court suggests Nutter consult 15 U.S.C. § 1691e(f) at some

point in the future; had it done so before filing its motion, it would learn that the statute of limitations under ECOA extends for "5 years after the date of the occurrence of the violation." Nutter claims that the statute of limitations clock began running by at least December 9, 2015; as Plaintiff initiated this suit on October 21, 2019, she is well within the five-year statute of limitations.

### D. Federal Rule of Civil Procedure 65

Reverse Mortgage argues that Plaintiff has failed to comply with Rule 65 of the Federal Rules of Civil Procedure with respect to Count One of her Complaint. *Mem. in Support of Reverse Mortgage Mot. to Dismiss*, ECF No. 12, at 3. Rule 65 governs injunctions and restraining orders, and provides that courts cannot issue either remedy unless "the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). This argument fails for the simple reason that Plaintiff does not request a preliminary injunction or restraining order anywhere in her Complaint, let alone in Count One. Instead, she requests "a declaratory judgment holding that defendants are estopped from foreclosing on Plaintiff's home under the reverse mortgage Deed of Trust until Plaintiff's death or her sale or abandonment of the home." *Compl.*, at ¶ 74.

The distinction between declaratory judgment and injunctive relief is significant. "Declaratory judgments . . . are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct," *Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003), whereas "[p]reliminary injunctions are meant to 'protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability tor render a meaningful judgment on the merits,'" *Perry v. Judd*, 840 F. Supp. 2d 945, 950 (E.D. Va. 2012) (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003)). While

"the practical effect of the two forms of relief will be virtually identical" in many cases, *Samuels v. Mackell*, 401 U.S. 66, 73 (1971), there is no requirement that a plaintiff post a bond or other security before a court may enter a declaratory judgment, *see* 28 U.S.C. § 2201(a). Simply put: Plaintiff has raised a claim declaratory relief rather than a preliminary injunction, and the security requirements of Rule 65 are therefore inapposite to this case.

### E. Failure to State a Claim Against Reverse Mortgage in Count Five[8]

Reverse Mortgage's final argument for dismissal concerns Count Five, which is Plaintiff's equitable claim to quiet title on the property based on her husband's fraud. *Compl.*, at ¶¶ 86–94. Reverse Mortgage contends that it had no role in the underlying fraud and is not specifically named in Count Five. Both statements are correct, as far as they go. Yet the Court considers the Complaint as a whole, and takes special notice of Plaintiff's contention that she "does not know if [Reverse Mortgage] is now the holder of the reverse mortgage or its servicer." *Id.* at ¶ 55. Given this ambiguity, Reverse Mortgage is a vital party to any claim seeking to quiet title on the disputed property. *See O'Daniels v. City of Charleston*, 490 S.E.2d 800, 801, Syl. Pt. 2 (W. Va. 1997) ("When a court proceeding directly affects or determines the scope of rights or interests in real property, any persons who claim an interest in the real property at issue are indispensable parties to the proceeding."). This is particularly true given Reverse Mortgage's own disinclination to explain its precise connection with the loan. *See generally Mem. in Support of Reverse Mortgage Mot. to Dismiss*. At the motion to dismiss stage, courts must "draw all reasonable inferences in

---

[8] Reverse Mortgage also argued that Plaintiff had not stated a claim against it in Count Four. *Mem. in Support of Reverse Mortgage Mot. to Dismiss*, at 3–4. Plaintiff clarified that Reverse Mortgage was not included in Count Four, and that any misunderstanding stemmed from her inadvertent use of "the conjunctive 'and' instead of the intended conjunctive 'and/or' in explaining" the claim. *Resp. in Opp'n to Reverse Mortgage Mot. to Dismiss*, at 9 n.7. If Reverse Mortgage were included in Count Four, the Court would agree that dismissal was warranted. As it is not, the Court need not—and will not—take any action.

favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). It is entirely reasonable for this Court to draw the inference that Reverse Mortgage *does* retain an interest in the property at issue here. If the evidence produced during discovery makes clear that no such interest exists, dismissal would be warranted. At this stage of litigation, however, Reverse Mortgage is an indispensable party to any claim seeking to quiet title on the property and its motion to dismiss Count Five must be denied.

### F. Failure to State a Claim Against Nutter in Count Four

The final argument the Court need address is raised by Nutter with respect to Count Four. Nutter claims that Plaintiff's ECOA claim fails for two reasons: first, that she never submitted an "application for credit," and second, that she did not trigger any statutory notice requirements. The Court considers both contentions separately.

#### 1. "Application for Credit"

The argument between Nutter and Plaintiff on this point can be neatly summarized. At some time after the initiation of the HUD MOE program, Plaintiff "applied to defendant Nutter to continue the reverse mortgage credit transaction and extend the maturity of the reverse mortgage loan until her own death, or sale or abandonment of the home." *Compl.*, at ¶ 23. Nutter argues that this request for assignment to the MOE program was not an application for credit, but rather a request related to remedies Nutter was legally entitled to exercise. *Mem. in Support of Nutter Mot. to Dismiss*, at 7. For support, Nutter points to a single case from the Central District of California wherein a court declined to apply the ECOA after a plaintiff requested a lender allow a short sale of his property rather than a foreclosure. *Cruz v. Freedom Mortgage Corp.*, No. CV 18-1438 PSG, 2018 WL 6118532, at *2 (C.D. Cal. May 3, 2018). In response, Plaintiff raises a confused argument that Nutter is somehow engaging in marital discrimination in its actions. *See Resp. to*

*Nutter Mot. to Dismiss*, at 19. The Court disregards this argument, and focuses narrowly on the statutory and regulatory text defining what constitutes an "application for credit."

Under ECOA, an "applicant" is "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691e(b). In turn, the term "credit" "means the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor." 15 U.S.C. § 1691e(d). ECOA further authorizes the Board of Governors of the Federal Reserve System to "prescribe regulations to carry out the purposes" of the Act. 15 U.S.C. § 1691b. These regulations are collectively known as Regulation B, and provide, *inter alia*, that an "applicant" is "any person who requests or who has received an extension of credit from a creditor." 12 C.F.R. § 1002.2(e). Regulation B also provides that the terms "extend credit" and "extension of credit" "mean the granting of credit in any form (including, but not limited to, . . . the continuance of existing credit without any special effort to collect at or after maturity)," 12 C.F.R. § 1002.2(q), and that "[c]redit means the right granted by a creditor to an applicant to defer payment of a debt, incur debt and defer its payment, or purchase property and defer payment therefor," 12 C.F.R. § 1002.2(j).

The question for this Court is thus quite narrow: was Plaintiff's MOE application merely a request for Nutter to alter the remedies it was entitled to employ to obtain repayment of the loan, or was it a broad request to "defer payment of a debt" within the meaning of 12 C.F.R. § 1002.2(j)? With the information presently before the Court, it seems clear that Plaintiff's application falls squarely within the latter category. Plaintiff's request to participate in the MOE program was a request to defer repayment of the reverse mortgage and continue living on the property until her

death. While the impact of this request obviously impacts the remedies Nutter and Reverse Mortgage would be free to employ in obtaining repayment of the loan, this does not alter the nature of Plaintiff's application to participate in the MOE program. In brief: as an "application for credit," Plaintiff's request fits neatly within the ambit of ECOA.

### 2. Notice Requirements

Nutter's second argument is that the reverse mortgage was in default at the time Plaintiff submitted her application for credit, thereby relieving it of the ECOA's statutory notice requirements under 15 U.S.C. § 1691(d)(2). Plaintiff responds by essentially conceding this point, and directs the Court's attention to the separate statutory notice requirement found at 15 U.S.C. § 1691(d)(1).[9] Nutter replies by arguing that Regulation B relieves it from notice obligation under either provision.

Under 15 U.S.C. § 1691(d)(1), creditors must "notify the applicant of its action on the application" within thirty days "after receipt of a completed application for credit." Similarly—though distinctly—15 U.S.C. § 1691(d)(2)(3) requires creditors to provide "written notification of adverse action." In turn, Regulation B provides that creditors are required to "notify and applicant of action taken within . . . 30 days of receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R. § 1002.9(a)(i). The term "adverse action" does not include "any action or forbearance relating to an account taken in connection with inactivity, default, or delinquency as to that account." 12 C.F.R. § 1002.2(c)(2)(ii). This language has led courts to conclude that creditors are not required to provide adverse action notifications under Subsection 1691(d)(2) when they deny applications for credit from borrowers

---

[9] Plaintiff also repeats her allegations of marital discrimination, which are neither pleaded nor supported by the facts as alleged. *Resp. to Reverse Mortgage Mot. to Dismiss*, at 24.

already in default. *See*, *e.g.*, *Casey v. Litton Loan Servicing*, No. RDB-11-0787, 2012 WL 502886 (D. Md. Feb. 14, 2012) ("The case law on this matter is clear—a creditor need not provide an adverse action notification when it denies a loan modification request by a delinquent borrower."). This much, then, is plain: as the loan in question was in default at the time of Plaintiff's application for credit, Nutter was not required to provide notice of any adverse action under Subsection 1691(d)(2).

The question of whether Subsection 1691(d)(1) imposes a separate notice requirement does not lend itself to the same degree of clarity. In fact, Courts disagree as to whether Regulation B's "delinquency" exception applies to notice requirements under Subsections 1691(d)(2) and 1691(d)(1). On one side of the question, courts have reasoned that "[t]o the extent that ECOA is ambiguous about whether notification is required under section 1691(d)(1) to an applicant who is in default, the implementing regulations clarify that no notice is required in that circumstance." *Hackett v. Wells Fargo Bank, N.A.*, No. 17-CV-07354-CAS, 2018 WL 1224410, at *6 (C.D. Cal. Mar. 5, 2018); *see also Craig v. Capital One, N.A.*, No. 17-CV-3788-DMG, 2018 WL 5857987, at *4 (C.D. Cal. Apr. 10, 2018); *Smith v. Wells Fargo Bank, N.A.*, No. 15-CV-01779-YGR, 2016 WL 283521, at *7 (N.D. Cal. Jan. 25, 2016).

Other courts have applied a different analytical framework. These courts reason that Subsection 1691(d)(1) and 1691(d)(2) are separate statutory provisions, and that the delinquency exception found in 12 C.F.R. § 1002.2(c)(2)(ii) does not apply to notice requirements imposed by Subsection 1691(d)(1). *Piotrowski v. Wells Fargo Bank, N.A.*, No. DKC 11-3758, 2013 WL 247549, at *7 (D. Md. Jan. 22, 2013) (reasoning that "a plaintiff states a claim under Subsection (d)(1) by alleging that a creditor failed to provide timely notice in response to the plaintiff's application for credit," and that plaintiff in default "stated a plausible ECOA claim under

Subsection 1691(d)(1), but not under Subsection 1691(d)(2)" (internal quotations omitted)); *see also Thompson v. JP Morgan Chase Bank, N.A.*, No. WDQ-13-1982, 2014 WL 4269060, at *5–6 (D. Md. Aug. 27, 2014); *Kaswell v. Wells Fargo Bank, N.A.*, No. RDB-13-2315, 2014 WL 3889183, at *3–4 (D. Md. Aug. 6, 2014).

While both interpretations have merit, Congress made the clear choice to distinguish the "notice" required by Subsection 1681(d)(1) from the "notification of adverse action" required by Subsection 1681(d)(2). Subsection 1681(d)(1) speaks to notice of *any* action in response to an application for credit—positive, negative or otherwise neutral. *See Ortega v. Well Fargo Bank, N.A.*, No. 3:11cv01734, 2012 WL 275055, at *4 (N.D. Ohio Jan. 31, 2012). In contrast, Subsection 1691(d)(2) applies to the content of *adverse* action notifications. *Id.* at *4. These obligations are distinct. By its plain language, the definition of "adverse action" found in 12 C.F.R. § 1002.2(c)(2)(ii)—the source of the delinquency exception—only serves to modify the statutory notice requirement for certain types of notices required by Subsection 1691(d)(2). Neither 12 C.F.R. § 1002.9(a)(i) nor any other regulation broadens this definition to notice required under Subsection 1691(d)(1).[10]

Here, Plaintiff has alleged that "Nutter never approved, denied or requested additional information on Plaintiff's application" and "wrongly failed to determine and provide notice in writing that Plaintiff was a non-borrowing spouse entitled to remain in the home until her death or abandonment of it." *Compl.*, at ¶¶ 25–26. An allegation that a defendant has not provided timely notice in response to an application for credit is sufficient to state a claim under the ECOA.

---

[10] Defendants cite the *Hackett* court's assertion that courts distinguishing between Subsections 1691(d)(1) and 1691(d)(2) "did not consider, or were not presented with the relevant implementing regulations." *Hackett*, 2019 WL 5784741, at *6. This is incorrect. *See Piotrowski*, 2013 WL 247549, at *8 (citing 12 C.F.R § 202.2(c)(2)(ii), which is identical to 12 C.F.R. § 1002.2(c)(2)(ii)).

*Piotrowski*, 2013 WL 247549, at *7. As such, Plaintiff has stated a claim against Nutter under the ECOA.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the motions to dismiss, ECF Nos. 3, 6, 11, and **DIRECTS** the Clerk to send a copy of this memorandum opinion and order to counsel of record and any unrepresented parties.

ENTER: February 5, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE